UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REM SENIOR SERVICES CORP., and BETHESDA HOME CARE, LLC,

Plaintiffs,

v.

HOME INSTEAD, INC.

Defendant.

______________________________ /

Case No. 4:25-cv-13746

Hon. F. Kay Behm
United States District Judge

**OPINION AND ORDER ON PLAINTIFFS' MOTION TO TRANSFER, DISMISS, OR STAY (ECF No. 15)**

## I. PROCEDURAL HISTORY

This matter is before the court on Defendant Home Instead, Inc.'s motion to transfer, dismiss, or stay the case (ECF No. 15). Plaintiff filed a response (ECF No. 21). The parties then submitted a series of supplemental briefs that the court also takes under consideration (ECF Nos. 23, 26, 27).

For the reasons explained below, the court **GRANTS** Defendant's motion **IN PART** and **STAYS** this action. The court denies Defendant's alternative requests to transfer or dismiss this action without prejudice.

## II. FACTUAL BACKGROUND

Defendant, Home Instead is a franchise network in Nebraska. ECF No. 14, PageID.154. Plaintiffs, REM Senior Services "REM" and Bethesda Home Care "BHC" are Michigan based home care agencies. *Id*. REM and BHC each respectively entered into a franchise agreement with Home Instead. *Id.* at PageID.155. Each Home Instead franchise offers non-medical companionship and in-home care support for individuals throughout its local community. *Id.*

Around the beginning of August 2021, an entity known as Honor Technology ("Honor") acquired a controlling interest in Home Instead. *Id.* Honor utilizes a different business model for delivering care than Home Instead, known as the "Care Platform." *Id.* Franchisees of Home Instead, who used what they term a "traditional model" of care, became concerned about moving to the Care Platform model. Under the Care Platform model, Honor handles many of the duties and responsibilities previously assigned to franchisees. ECF No. 14, PageID.161. In Plaintiffs' view, the Care Platform effectively converts each franchisee into a sales manager for Honor's own business, rather than an independent franchised business. *Id.* at PageID.156. The relevant point for today's purposes is that franchisees make substantially less

money under the Care Platform model. *Id.* So Home Instead franchisees considered any transition to the Care Platform model a material modification to their existing franchisor-franchisee relationship, and certain franchisees of Home Instead therefore decided to form a Franchisee Association in 2022 to protect their interests. *Id.* at PageID.156.

On April 25, 2023, Home Instead sent out a new franchise agreement to its franchisees. *Id.* at PageID.157. Because the new terms of the franchise agreement would allegedly generate more income for Home Instead, Home Instead proactively sought to force all franchisees to execute the new franchise agreement (in other words: renew their existing franchise agreements under Home Instead's new terms) irrespective of the current expiration date of their franchise agreement. *See id.* However, no franchisee was amenable to renewing early because of the many changes made to the franchise agreement – such as increasing minimum performance standards for franchisees, reducing the term of the agreement, increasing royalty fees, and changing the terms and conditions of renewal to be less favorable for franchisees. The Franchisee Association sent a letter of demand to

Home Instead regarding their concerns. *Id.* at PageID.158. Home Instead and a large group of the Franchise Association known as the Zarco Group participated in mediation in March of 2024. *Id.* at PageID.158. The mediation led to a Settlement Agreement roughly six weeks later. *Id.* The Settlement Agreement was executed on May 2, 2024 and expires sometime after March 17, 2027. *Id.* at PageID.155, 159. On July 23, 2024 Home Instead sent out a communication to the entire franchise system stating the mediation terms would be extended to all franchisees, and included the agreement along with Home Instead's interpretations of its terms. *Id.* at PageID.162.

In relevant part, the Settlement Agreement guarantees, for franchisees in good standing, a right to renew their franchise agreements. The parties disagree over the scope of that renewal right, contained in Paragraph 5 of the Settlement Agreement. It reads as follows:

> 5.0 <u>Existing Franchisees' Right to Renew.</u> Home Instead agrees that franchise agreements executed within three (3) years of the Effective Date shall not include language granting Home Instead discretion over renewals. Home Instead further agrees that franchisees shall have a (5) year auto-renewal as long as the franchisee is in good standing and meets the other material conditions set forth in the franchise agreement.

*Id.* at PageID.159-60.

Importantly, the Settlement Agreement also states that Home Instead will not require franchisees who are not on the Care Platform to convert to it for a period of three years. *Id.* In other words, Plaintiffs read the Agreement to say that those franchisees who renew their agreements before March 17, 2027 are able to renew their franchise agreements without switching to the Care Platform. *Id.*; *see id.* at PageID.163 ("if Home Instead permits each Plaintiff to renew [their] operative Franchise Agreement early consistent with the terms of the Settlement Agreement, such Franchise Agreement becomes subject to a five (5) year auto-renewal on the same terms and conditions.").

All appear to agree that this three-year grace period applies to franchisees whose agreements will naturally expire and be renewed before March 17, 2027. *See id.* at PageID.164. Plaintiffs' franchise agreements, however, are set to expire after March 17, 2027. Plaintiffs therefore seek to exercise an early renewal option to retain their current business model rather than the Care Platform model. Home Instead, however, has indicated that it will not allow franchisees whose agreements expire after March 17, 2027 to renew their agreements

early. *Id.* at PageID.163-64. The relevant effect, according to Plaintiffs, is that those franchisees renewing their agreements after March 2027 must convert to the Care Platform business model.

Plaintiffs claim that disallowing early renewals is a breach of the Settlement Agreement, because they read Paragraph 5 of the Agreement to contain a right to auto-renewal for all franchisees before March 17, 2027, so long as they remain in good standing. ECF No. 21, PageID.373 ("there is ***no*** language whatsoever in Paragraph 5.0 that conditions [franchisees'] right to renew by no later than March 17, 2027 only if their existing Franchise Agreement expires prior to such date"). Defendants say the opposite: "Nowhere in the Agreement are Plaintiffs provided the right to execute renewal franchise agreements prior to their current franchise agreements expiring, and Plaintiffs fail to identify a provision of the Agreement providing such right." ECF No. 15, PageID.226 (emphasis omitted).

Before reaching the merits of the breach of contract claim, threshold issues may bar this dispute entirely. Defendant Home Instead argues that this action is barred by res judicata (claim preclusion), because the same attorney(s) have filed nearly the exact

same case in Nebraska and California as to other Home Instead franchisees, and the Nebraska court has already issued a final judgment as to the Nebraska plaintiffs. *Id.* at PageID.172; *see WJM Home Care, LLC v. Home Instead*, 8:25-cv-00654-RFR-RCC, ECF No 67 (D. Neb. April 2, 2026); *Managed Care, Inc. et al v. Home Instead, Inc.*, No. 5:25-cv-03149-JGB-SP (C.D. Cal. Nov 11, 2025). The Nebraska case was filed first on November 11, 2025. The Nebraska U.S. district court dismissed the plaintiffs' case on April 2, 2026, for failure to state a claim upon which relief can be granted. ECF No. 27 at PageID.527.

On April 30, 2026 the Nebraska Plaintiffs filed a Motion to Amend or Alter Judgment under Fed. R. Civ. P. 59(e) and for Leave to File Second Amended Complaint. *WJM Home Care, LLC v. Home Instead*, 8:25-cv-00654, ECF No. 69. It is true that a 59(e) motion does not change the fact that a dismissal for failure to state a claim under Rule 12(b)(6) is a "judgment on the merits" for res judicata purposes. *See Federated Dept Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) (noting that "a pending Rule 59 motion" does not "deprive a judgment of finality for [preclusion] purposes"); *see Bell v. Taylor*, 827 F.3d 699, 707 (7th Cir. 2016)

("[F]inality for purposes of appeal is not the same as finality for purposes of preclusion."). The pending motion may be nonetheless important to consider in the interests of justice to prevent inconsistent judgments in this circumstance. The California action was also filed earlier than this case, on November 21, 2025 (3 days before this action) and that case also remains pending. A motion to dismiss, stay, or transfer was filed in that case on June 5, 2026, and is presently set for hearing August 24, 2026. *Managed Care, Inc. et al v. Home Instead, Inc.*, No. 5:25-cv-03149, ECF No. 32.

## III. STANDARD OF REVIEW

### A. 12(b)(1)

A motion brought under Federal Rule of Civil Procedure 12(b)(1) seeks dismissal on the basis that the court does not have subject matter jurisdiction over the case. Fed. R. Civ. P. 12(b)(1). Motions brought under Rule 12(b)(1) fall into two categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack is a "challenge to the sufficiency of the pleading itself" whereas a factual attack "is a challenge to the factual existence of subject matter jurisdiction." *Id*. In a facial attack, the court must

"accept[ ] the material allegations in the complaint as true and construe[ ] them in the light most favorable to the nonmoving party." *Id.*

**B. 12(b)(6)**

In deciding a motion to dismiss under Rule 12(b)(6), the court "must construe the complaint in the light most favorable to the [nonmoving party] . . . [and] accept all well-pled factual allegations as true." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003). The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Moreover, the complaint must "contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief,

such as "when an affirmative defense . . . appears on its face." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (quotation marks omitted). A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id*. at 678. However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679. The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527. Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6). At the motion-to-dismiss stage, the court does not consider whether the factual allegations are probably true; instead a court must accept the factual allegations as true, even when skeptical.

*See Twombly*, 550 U.S. at 555 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)").

## IV. ANALYSIS

### A. Subject Matter Jurisdiction

Before reaching any other issue, the court must address a threshold issue. Defendant Home Instead challenges the sufficiency of the jurisdictional allegations regarding the amount in controversy, asserting they are speculative and inadequately pleaded. ECF No. 15, PageID.222. This is an attack on the court's subject matter jurisdiction, of which the court must be assured before proceeding to any of the other questions presented. *Akno 1010 Mkt. St. St. Louis Mo. LLC v. Nahid Pourtaghi*, 43 F.4th 624, 627 (6th Cir. 2022).

The amount in controversy is measured by the status of the case as disclosed by the plaintiff's complaint at the time the complaint is filed. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938); *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990). A plaintiffs claimed sum controls "if the claim is apparently made in good faith." *St. Paul,* 303 U.S. at 288. For a defendant to challenge the

jurisdictional amount "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* at 289.

A challenge to subject matter jurisdiction can be either facial or factual. *See United States v. Ritchie,* 15 F.3d 592. A facial attack occurs when the claim is apparently made in good faith. *Id*. at 598. Whereas a factual attack is "a challenge to the factual existence of subject matter jurisdiction . . . [where] the court is free to weigh evidence." *Id*. Defendant argues that Plaintiffs' claims are speculative and inadequately pleaded, but their exact point is hard to follow. Although at times the Defendant appears to frame the argument as a factual attack, in substance it appears to be a facial attack because Defendant has introduced no evidence for the court to weigh. Home Instead simply states that the complaint's allegations are insufficient on their face.

However, Defendant's argument that Plaintiff's jurisdictional allegations are "speculative" does not hold up to scrutiny. Defendant argues that there are no allegations showing "*how* [Plaintiffs] have been damaged by Home Instead maintaining discretion over renewals[.]"

ECF No. 15, PageID.228. But Plaintiff plausibly asserts that the right to renew their agreements early would mean they would retain the traditional care model, with its attendant financial benefits, and that the value of renewal on those terms exceeds $75,000. ECF No. 14, PageID.163. Plaintiffs plausibly alleged that Defendant will not permit them to renew their agreements early, even if Plaintiffs have not specifically requested to do so. *Id.* at PageID.163-64.[1] Plaintiffs' well-pleaded factual allegations, particularly those that explain the Care Platform model means that franchisees make "substantially less money" (ECF No. 14, PageID.161), constitute a good faith assessment of their claims' value even if the exact amounts may be "difficult to quantify." *See Kovacs v. Chesley*, 406 F.3d 393, 395 (6th Cir. 2005); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 510 (6th Cir. 1992). So Defendant has not shown to a "legal certainty" that the claim is really for less than $75,000. *See St. Paul*, 303 U.S. at 289. Because Home Instead has not met the burden of showing the claims to fall below the amount in controversy to a legal certainty, the complaint's jurisdictional

[1] This is also less a "jurisdictional amount" argument, so much as a ripeness argument or a challenge to injury-in-fact.

allegations are accepted as true, and the amount-in-controversy requirement is satisfied.

### B. Motion to Dismiss, Transfer, or Stay

On the merits of its motion, Defendant seeks to either (1) transfer this action to the District of Nebraska, or (2) dismiss this case on the merits as barred by res judicata. In the alternative, they argue the court should stay this case until the earlier cases resolve. The court agrees with Defendant on the third option. This case is the last-filed of three related actions. And for the reasons explained below, the court finds that there are risks of inconsistent judgments should the court rule on either transfer or dismissal at this time. The three matters appear to be identical except for the specific plaintiffs at issue, and address the same portion of the same contract. As the last-filed of the three related actions, the most prudent course, and the course that promotes comity between the federal district courts, is to stay this case pending resolution of the California district court's motion to dismiss, stay, or transfer.[2]

[2] The court is not convinced, as Defendant argued, that it ought to also stay this case until the Nebraska district court also rules on its 59(e) motion or subsequent appeal at this time. The California district court's choice in ruling on

The first-to-file rule is a prudential doctrine that provides that when actions involving nearly identical parties and issues are filed in different federal district courts, the court in which the first action was filed should generally proceed to judgment. *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). Courts consider three factors in determining whether the rule applies: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues or claims. *Id.* Even where these factors are satisfied, courts must also consider equitable considerations, including bad faith, anticipatory filing, inequitable conduct, and forum shopping. *Id.*

Defendant argues that a stay is appropriate because substantially similar actions concerning the interpretation of the Settlement Agreement were first filed in Nebraska and California. Defendant says a stay will promote judicial economy, avoid inconsistent rulings, and reduce the burden of litigating identical contractual issues in multiple federal courts. ECF No. 27 PageID.6.

---

its motion to dismiss, stay, or transfer will affect whether and the extent to which the Nebraska 59(e) motion and/or appeal should be given any weight in this court's own transfer or stay analysis.

Plaintiffs responds that a stay is unwarranted because the Nebraska action has already been dismissed, and the California plaintiffs are different franchisees whose interests may not adequately represent the Michigan Plaintiffs. Plaintiffs further argue that Michigan has a substantial interest in resolving disputes involving Michigan franchisees. ECF No. 21, PageID.5-6, 15.

**i. Chronology**

The first factor requires the court to consider the chronology of the competing actions. *Baatz*, 814 F.3d at 789. The relevant date for purposes of the first-to-file rule are the dates the relevant complaints were filed. *Id.* at 790. The chronology favors a stay. The Nebraska action was filed on November 11, 2025. The California action followed on November 21, 2025, and Plaintiffs filed this action on November 24, 2025. *WJM Home Care, LLC v. Home Instead*, 8:25-cv-00654 (D. Neb. Nov. 10, 2025); *Managed Care, Inc. et al v. Home Instead, Inc.*, No. 5:25-cv-03149 (C.D. Cal. Nov. 21, 2025); *REM Senior Services Corp., v. Home Instead.,* No. 4:25-cv-13746 (E.D. Mich. Nov. 24, 2025). Although the Nebraska district court dismissed the complaint, the litigation has not yet completely concluded because post-judgment proceedings remain

ongoing in the district court, and the California action involving the same Settlement Agreement and same motion to dismiss, transfer, or stay remains pending.

The parties dispute whether the Nebraska judgment, and pending Rule 59(e) motion, counts for purposes of finality. Whether the Nebraska judgment is final is not an issue this court needs to definitively address because the California action was also filed before the Michigan action. Either action precedes this one under the first-to-file rule.

**ii. Similarity of the Parties**

The second factor considers the similarity of the parties. Although the first-to-file rule does not require perfect identity, the parties must be "nearly identical." *Clear!Blue, LLC v. Clear Blue, Inc.*, 521 F. Supp. 2d 612, 614 (E.D. Mich. 2007). This factor also favors a stay. The plaintiffs in this action are different legal entities than those in the Nebraska and California actions. However, the plaintiffs across each action are Zarco Group franchisees seeking to enforce their interpretation of the same provisions of the same Settlement Agreement. Although the franchise agreements themselves are not

part of the present record and each franchisee presumably has a slightly different franchise agreement, the franchisees nonetheless share a substantially similar legal interest in the interpretation and enforcement of Paragraphs 5 and 6 of the Settlement Agreement. Accordingly, there is sufficient overlap between the parties for purposes of the first-to-file rule.[3]

### iii. Similarity of the Issues

The third factor considers the similarity of the issues presented. The actions need not be identical; rather, the issues must substantially overlap. *Baatz*, 814 F.3d at 790-91. The issues here substantially overlap. In each action, the central dispute concerns the meaning and enforceability of Paragraphs 5 and 6 of the Settlement Agreement. Specifically, the parties admit that Plaintiffs ask each court to determine whether Paragraph 5 permits franchisees to obtain an early five-year renewal and whether Paragraph 6 prevents Home Instead from requiring franchisees to transition to the Care Platform during the three-year period established by the Settlement Agreement. The

---

[3] This finding should not be construed to comment on the parties' arguments regarding privity for purposes of res judicata.

earlier-filed actions will address the same contractual questions presented here.

More importantly, the earlier-filed California action will also address the same issues presented in regards to claim preclusion, transfer, and stay. Case No. 25-cv-03149, Doc. 32. These issues pose a risk of inconsistent judgments were the court to rule prior to the California district court having the opportunity to do so. Whatever this court were to decide on the claim preclusion or transfer issues, the earlier-filed California action would be faced with this court's decision in making its own ruling. This factor strongly favors a stay.

**iv. Equitable Considerations**

Even where the three *Baatz* factors are satisfied, courts must also consider equitable considerations, including bad faith, anticipatory filing, inequitable conduct, and forum shopping. *Baatz*, 814 F.3d at 789. The court finds no equitable consideration weighing against application of the first-to-file rule. There is no indication, at this time, that the earlier-filed actions were initiated in bad faith or for purposes of forum shopping. Staying this action while the earlier-filed litigation proceeds will promote judicial economy, avoid duplicative litigation, and reduce

the possibility of inconsistent interpretations of the Settlement Agreement and on the issues of claim preclusion and transfer. Accordingly, the court concludes that a stay is warranted under the first-to-file rule.

## V. CONCLUSION

Therefore, the court **GRANTS** Defendant's motion **IN PART** and **STAYS** this action, pursuant to the first-to-file rule, pending resolution of the motion to dismiss, transfer, or stay presently pending in the California action. The court declines to address Defendant's alternative requests to transfer this action or dismiss it on res judicata grounds at this time, and that portion of the motion is **DENIED WITHOUT PREJUDICE**. Defendant may raise those arguments again once the stay is lifted, and in light of any developments in the related cases. It is **FURTHER ORDERED** that the parties shall file a joint status update in this case every 60 days until the stay is lifted, and shall file a status update within 14 days of an order resolving the California district court's motion to dismiss, transfer, or stay.

**SO ORDERED**.

Date: August 10, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge